JUDGE LYNCH

08 CIV 5095

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
By: AMY LESTER (AL-3398)
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2416

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA               :     VERIFIED COMPLAINT

         -v.-                          :     08 Civ.

$2,188,727.86 IN FUNDS FORMERLY        :
ON DEPOSIT AT MERRILL LYNCH
ACCOUNT NUMBER ▮▮▮▮7J16,              :
HELD IN THE NAME OF BLACKSTONE
INTERNATIONAL DEVELOPMENT,             :

         Defendant-in-rem.             :

- - - - - - - - - - - - - - - - -x

RECEIVED JUN 03 2008 U.S.D.C. S.D.N.Y. CASHIERS

        Plaintiff United States of America, by its attorney, MICHAEL J. GARCIA, United States Attorney for the Southern District of New York, for its verified complaint alleges, upon information and belief, as follows:

I. NATURE OF THE ACTION

        1.    This an action by the United States of America seeking forfeiture of $2,188,727.86 in funds formerly on deposit at Merrill Lynch, Account No. ▮▮▮▮7J16, held in the name of Blackstone International Development (the "Defendant Funds"). The Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions in violation of 18 U.S.C. §§ 1956 and 1957, and pursuant to 21 U.S.C. § 881(a)(6), as proceeds traceable to exchanges of money

for a controlled substance in violation of the federal narcotics laws or as property that was used or intended to be used to facilitate violations of the federal narcotics laws.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.

3. Venue is proper pursuant to 28 U.S.C. § 1355(b) because the Defendant Funds were found and seized in the Southern District of New York.

4. On or about May 16, 2008, the Government sought and obtained a seizure warrant, authorized by United States Magistrate Judge Theodore H. Katz, for the seizure of the Defendant Funds on the grounds that there was probable cause to believe that such funds were subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions in violation of 18 U.S.C. §§ 1956 and 1957, and pursuant to 21 U.S.C. § 881(a)(6), as proceeds traceable to exchanges of money for a controlled substance in violation of the federal narcotics laws or as property that was used or intended to be used to facilitate violations of the federal narcotics laws.

    a. Pursuant to the seizure warrant, a law enforcement agent with the New York Drug Enforcement Task Force seized the Defendant Funds.

b. The Defendant Funds, representing a sum of $2,188,727.86, are currently being held by the United States Marshals.

## III. PROBABLE CAUSE FOR FORFEITURE

5. Based on my training and experience in investigating the laundering of narcotics proceeds, I have learned that the Black Market Peso Exchange ("BMPE") is one method used to launder drug money and evade the record-keeping and reporting requirements mandated by law, as well as Latin American foreign exchange and import laws and tariffs.

6. The need to launder narcotics dollars arises out of the massive amounts of cash generated by sales of South American drugs -- mostly cocaine and heroin -- in the United States. These narcotics are sold in the United States for U.S. dollars, almost always in cash, and often in small denominations. Reporting and record-keeping requirements mandated by statute and regulation prevent drug dealers from simply depositing those funds into accounts in the United States and transferring them to Colombia or other countries, so drug traffickers must disguise, or "launder," the funds in order to hide their true source.

7. The basic Colombian BMPE scheme operates as follows. In Colombia, the owners of the narcotics proceeds generated in the United States contact a third party -- generally referred to as a "peso broker" -- who agrees to provide Colombian pesos he controls in Colombia for the cash narcotics proceeds

that the trafficker controls in the United States. A two-stage exchange is then arranged: in the United States, the traffickers' representatives transfer the cash narcotics proceeds -- often hundreds of thousands of U.S. dollars or more at a time -- to the broker's representatives; in Colombia, the broker pays the traffickers the corresponding amount (less the broker's commission) in Colombian pesos. Once this exchange occurs, the traffickers have effectively laundered their money and are out of the BMPE process. The peso broker, on the other hand, must now do something with the U.S. dollars that he has obtained in the United States so that he can obtain more pesos to begin the process again. In other words, the peso broker, who now has a pool of narcotics-derived funds in the United States, must find persons or businesses willing to buy U.S. dollars for pesos.

8. Colombians who want to buy dollars and who have pesos to sell then make arrangements with the peso broker. A Colombian businessman who needs dollars to fund an offshore investment account, or to pay a U.S. company for goods or services imported into Colombia, for example, might go to a broker to buy dollars instead of the overt Colombian banking system. By doing so, the businessman can get better exchange rates than from the banks and can avoid Colombian currency transaction reporting requirements and paying certain Colombian import and exchange tariffs. Once the businessman pays the broker in pesos, the peso broker will direct that the dollars he

has accumulated from the traffickers and put into the banking system be sent, usually by wire transfer, to wherever the sellers want them transferred.

9. All three parties involved in the BMPE process thus benefit: the traffickers receive laundered pesos; the Colombians wishing to buy dollars convert their pesos without reporting or paying taxes and tariffs; and the peso broker makes his profits on the "spread" between the price that the broker buys and sells the dollars.

10. The BMPE process may also involve more than one peso broker. One broker, for example, might have the direct relationship with the cartels in Colombia; another might have the contacts in the United States who can accumulate the narcotics proceeds; and yet a third might have the contacts with businesspeople or other wealthy Colombians who want dollars and have pesos to sell. Irrespective of how many intermediaries there are, the result is the same: pesos in Colombia are used to buy narcotics proceeds in U.S. dollars.

11. The fact that the BMPE process almost invariably utilizes narcotics proceeds has been widely publicized in Colombia. Any party using BMPE brokers in Colombia thus knows or reasonably should know that there is a substantial likelihood that the dollars they receive as the result of their transactions with peso brokers are the proceeds of narcotics transactions.

The Defendant Funds

12.     During the course of the Task Force investigation, I have learned of eighteen large wire transfers of U.S. dollars into an account at Merrill Lynch with account number ████7J16, which is held in the name of Blackstone International Development (the "Blackstone Account"), by individuals operating in Colombia during the period beginning on or about March 11, 2008 through on or about May 9, 2008.

13.     Specifically, from my review of documents obtained from Merrill Lynch, I have learned the following:

    a.  The Blackstone Account was opened on or about March 6, 2008 through the Merrill Lynch branch office located at 701 Brickell Avenue, 11th Floor, Miami, Florida, 33131.

    b.  The following wire transfers were made from sources outside the United States into the Blackstone Account:

| Wire Transfer Date | Amount |
| --- | --- |
| March 11, 2008 | $33,000.00 |
| March 12, 2008 | $500,000.00 |
| March 13, 2008 | $148,779.55 |
| March 13, 2008 | $62,980.00 |
| March 19, 2008 | $114,959.55 |
| March 26, 2008 | $125,000.00 |
| March 28, 2008 | $35,000.00 |
| March 28, 2008 | $35,000.00 |
| March 31, 2008 | $79,980.00 |

| | |
|---|---|
| April 1, 2008 | $100,000.00 |
| April 3, 2008 | $299,980.00 |
| April 14, 2008 | $100,000.00 |
| April 16, 2008 | $55,277.00 |
| April 18, 2008 | $200,000.00 |
| April 25, 2008 | $44,500.00 |
| May 1, 2008 | $220,000.00 |
| May 9, 2008 | $39,985.00 |
| May 9, 2008 | $99,980.00 |

IV. CLAIM FOR FORFEITURE

14. The Defendant Funds are subject to forfeiture pursuant to the following statutory provisions:

**Section 981(a)(1)(A) of Title 18 of the United States Code**

15. Title 18, United States Code, § 981(a)(1)(A) subjects to forfeiture "[a]ny property real or personal involved in a transaction or attempted transaction in violation of . . . section 1956, 1957 . . . of this title, or any property traceable to such property."

16. Title 18, United States Code, § 1956(a) provides:

(a)(1) [w]hoever knowing that the property
involved in a financial transaction
represents the proceeds of some form of
unlawful activity, conducts or attempts to
conduct a financial transaction which in fact
involves the proceeds of specified unlawful
activity -

(A)(i) with the intent to promote the
carrying on of specified unlawful activity;
or (ii) with intent to engage in conduct

-7-

>constituting a violation of Section 7201 or 7206 of the Internal Revenue Code of 1986; or
>
>(B) knowing that the transaction is designed in whole or in part -- (i) to conceal or disguise the nature, the location, the source of ownership, or the control of the proceeds of specified unlawful activity; or to avoid a transaction reporting requirement under State or Federal law.

17. A "financial transaction," as defined by 18 U.S.C. § 1956(c)(4), includes "a transaction which in any way or degree affects interstate or foreign commerce (i) involving the movement of funds by wire or other means or (ii) involving one or more monetary instruments . . . ."

18. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any offense under 18 U.S.C. § 1961(1). Section 1961(1) lists as an offense "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States."

19. Title 18, United States Code, § 1957 provides, in pertinent part:

>(a) Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b).
>
>\*     \*     \*
>
>(d) The circumstances referred to in subsection (a) are --

> (1) that the offense under this section takes place in the United States or in the special maritime and territorial jurisdiction of the United States . . . . Because the Defendant Funds relate to the concealment and laundering of narcotics proceeds, such funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) as they represent property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 1956(a)(1)(B)(ii), and property traceable to such property.

### Section 881 of Title 21 of the United States Code

20.  Title 21, United States Code, § 881(a)(6) subjects to forfeiture:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance . . . in violation of [Subchapter I of Title 21], all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of [Subchapter I of Title 21] . . . .

### Section 984 of Title 18 of the United States Code

21.  Section 984 of Title 18 of the United States Code provides, in pertinent part:

> (a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution (as defined in section 20 of this title), or precious metals--
>
> (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

> (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.
>
> (b) No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense.
>
> (c)(1) Subsection (a) does not apply to an action against funds held by a financial institution in an interbank account unless the account holder knowingly engaged in the offense that is the basis for the forfeiture.
>
>           \*    \*    \*
>
> (d) Nothing in this section may be construed to limit the ability of the Government to forfeit property under any provision of law if the property involved in the offense giving rise to the forfeiture or property traceable thereto is available for forfeiture.

22.  In substance, among other things, this provision permits the Government to seize and forfeit funds in a bank account into which forfeitable assets have been transferred within one year, without the necessity of showing that the specific funds now in the account themselves constitute the forfeitable funds. In other words, "tracing" of the funds in the account now to the forfeitable funds that were transferred into the account is not required for transfers within one year of the

seizure. The Defendant Funds were transferred into the Blackstone Account within one year of their seizure.

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant Funds and that all persons having an interest in the Defendant Funds be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant Funds to the United States of America for disposition according to law and that this Court grant plaintiff such further relief as this Court may deem just and proper together with the costs and disbursements in this action.

Dated:     New York, New York
           June 3, 2008

        MICHAEL J. GARCIA
        United States Attorney for
        Plaintiff United States of America

By: _____
    AMY LESTER (AL-3398)
    Assistant United States Attorney
    One St. Andrew's Plaza
    New York, New York 10007
    (212) 637-2416

VERIFICATION

STATE OF NEW YORK            )
COUNTY OF NEW YORK           :
SOUTHERN DISTRICT OF NEW YORK )

JOHN BARRY, being duly sworn, deposes and says that he is a Detective with the New York City Police Department, and is currently assigned to the New York Drug Enforcement Task Force, that he has read the foregoing complaint and knows the contents thereof, and that the same is true to the best of his knowledge, information, and belief.

The sources of deponent's information and the grounds of his belief are his own personal observations and discussions with and documents prepared by other law enforcement officers and others.

```
                                    _____
                                    JOHN BARRY
                                    Detective
                                    New York Drug Enforcement Task Force
```

Sworn to before me this
3rd day of June, 2008

_____
Notary Public

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires May 8, 2010